UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

MARK A. MORAD                                           CIVIL ACTION

VERSUS                                                  NO. 12-2188

LINO J. AVIZ, AVIZ HOME                                 SECTION: "C" (5)
IMPROVEMENT & GENERAL
CONTRACTOR, INC., ACCIDENT
INSURANCE COMPANY, INC.
and NATIONWIDE PROPERTY
& CASUALTY INSURANCE
COMPANY

### **ORDER AND REASONS**[1]

Before the Court is the defendant, Nationwide Property & Casualty Insurance Company's ("Nationwide") Motion for Partial Summary Judgment. Rec. Doc. 59. Plaintiff, Mark A. Morad ("Morad"), opposes this motion. Rec. Doc. 72. A late opposition was filed by Lino Aviz and Aviz Home Improvement & General Contractor, Inc. (collectively "Aviz"). Rec. Doc. 106. The motion is before the Court on the briefs and without oral argument. Having considered the memoranda of counsel, the record, and the applicable law, the Court has determined that summary judgment is PARTIALLY GRANTED and PARTIALLY DENIED for the following reasons.

### **I. BACKGROUND**

The plaintiff filed suit against Aviz, which were parties involved in the demolition and reconstruction of the plaintiff's restaurant in New Orleans. Rec. Doc. 1, at 1-2. Nationwide, Aviz's general liabilty insurer, is also named as a defendant. Rec. Doc. 1, at 2. In its answer,

---

[1] Jennifer Watkins, a third-year student at Tulane University Law School, assisted in the preparation of this Order and Reasons.

1

Nationwide repeatedly raised the defense that it is not liable and/or owes Aviz no duty to defend or indemnify under the policy and that the policy affords no coverage for the claims made by Morad. Rec. Doc. 18.

The plaintiff, Morad, entered into a written contract with Aviz in January 2011 to perform renovations and repairs to a building that the plaintiff was converting into a restaurant. Rec. Docs. 70 at 2; 72 at 2. As part of his duties, Aviz hired subcontractors including Jefferson Mignotti Construction (general construction), Sanderson Plumbing (plumbing), Deivis Pinheiro (flooring) and others. *Id.* Aviz, as the contractor, supervised the work performed by the subcontractors but did little of the actual work himself. *Id.* The work was substantially completed by October 2011, and after a final inspection, Aviz was released from the job. *Id.* Plaintiff alleges that defective work became apparent in November 2011, which caused a six-month delay in the opening of the restaurant.[2] Rec. Docs. 70 at 2; 1 at 5-6. During the delay of the restaurant opening, Morad had to pay the restaurant staff's salaries. Rec. Doc. 1, at 6. In addition to the claims related to the defective construction work, Morad also alleges that he paid Aviz for work that was never performed. Rec. Doc. 1 at 5. The plaintiff brings claims of professional negligence, breach of contract, and redhibition. Rec. Doc. 1 at 5-8.

In its answer to the complaint, Nationwide asserted a counterclaim against Morad and a crossclaim against Aviz seeking a declaratory judgment under Fed. R. Civ. P. 57 that Nationwide

---

[2] The alleged construction defects include: negligent construction of the flooring that ultimately caused it to swell, buckle, separate and collapse; negligent construction of the plumbing system; negligent construction of the roof that included a failure to flash the roof or apply tar under the shingles; negligent electrical work, including improper wiring of the restaurant; and failure to renew Aviz Home Improvement license in violation of Louisiana Revised Statute 37:2160, *et seq.* Rec. Doc. 1 at 5-6.

does not owe Aviz a duty to defend or indemnify Aviz against the claims brought by Morad because no coverage exists for those claims under Nationwide's policy. Rec. Doc. 18 at 27. Now Nationwide moves for partial summary judgment and submits that there are no genuine issues of material fact as to whether coverage is owed by Nationwide to Morad's claims against Aviz. Rec. Doc. 59. Nationwide seeks that this Court make an affirmative declaration that coverage does not exist under Aviz's policy and seeks that this Court grant it relief that it has no duty to defend or indemnify Aviz. Rec. Doc. 59 at 10.

## II. LAW & ANALYSIS

### A. Controlling Law

As a preliminary matter, the parties dispute whether Louisiana or Mississippi law governs the interpretation of the Nationwide insurance policy. In diversity cases, federal courts must apply state substantive law. *Erie R.R. Co. v. Tompkins*, 304 U.S. 64, 78 (1938). In determining which state's substantive law controls, the court applies the choice-of-law rules of the forum state. *In re Katrina Canal Breaches Litigation*, 495 F.3d 191, 206 (5th Cir. 2007). The applicable Louisiana choice-of-law rules are found in La. Civ. Code art. 3537 and La. Civ. Code art. 3515. *See Champagne v. Ward*, 893 So.2d 773, 786–87 (La. 2005); *Norfolk S. Corp. v. Cal. Union Ins. Co.*, 859 So.2d 167, 179–80 (La. Ct. App.2003) These statutes state:

> Except as otherwise provided in this Title, an issue of conventional obligations is governed by the law of the state whose policies would be most seriously impaired if its law were not applied to that issue.
>
> That state is determined by evaluating the strength and pertinence of the relevant policies of the involved states in the light of: (1) the pertinent contacts of each state to the parties and the transaction, including the place of negotiation, formation, and performance of the contract, the location of the object of the contract, and the place of domicile, habitual residence, or business of the parties; (2) the nature, type, and purpose of the contract; and (3) the policies referred to in

3

> Article 3515, as well as the policies of facilitating the orderly planning of transactions, of promoting multistate commercial intercourse, and of protecting one party from undue imposition by the other.

La. Civ. Code art. 3537; and

> Except as otherwise provided in this Book, an issue in a case having contacts with other states is governed by the law of the state whose policies would be most seriously impaired if its law were not applied to that issue.
>
> That state is determined by evaluating the strength and pertinence of the relevant policies of all involved states in the light of: (1) the relationship of each state to the parties and the dispute; and (2) the policies and needs of the interstate and international systems, including the policies of upholding the justified expectations of the parties and of minimizing the adverse consequences that might follow from subjecting a party to the law of more than one state.

La. Civ. Code art. 3515.

"Louisiana courts generally choose the law of the state in which the insurance policy in question was issued to govern the interpretation of the terms of the policy." *Woodfield v. Bowman*, 193 F.3d 354, 360 (5th Cir. 1999); *see also Resure, Inc. v. Chem. Distribs. Inc.*, 927 F.Supp. 190, 192 (M.D.La. 1996) ("When confronted with similar cases, Louisiana courts consistently apply the law of the state in which the insurance policy was executed."). Mississippi is the state where the insured, Aviz, is domiciled, and it is the state where the policy was sold, negotiated and issued. Rec. Doc. 59-1. Additionally, Nationwide's agent office is located in Mississippi. *Id.* In keeping with this established principle, this Court concludes that Mississippi law governs the policy terms because Mississippi is the state that would be most seriously impaired if its law were not applied to the policies at issue. Louisiana law may apply to the underlying construction contract between Morad and Aviz, but currently at issue is the insurance policy between Nationwide and Aviz. Mississippi has a significant policy interest in

4

regulating its insurance industry, and its policies would be the most seriously impaired if its laws were not applied. *See Breese v. Hadson Petroleum (USA), Inc.*, 955 F. Supp. 648, 650 (M.D.La. 1996); *see also Anderson v. T & D Mach. Handling, Inc.*, No. 94-3188, 1996 WL 518140, at *3 (E.D.La. Sept. 9, 1996) (applying Georgia law when "Georgia's contacts include being the place of negotiation, formation and performance of the contract of insurance" and noting that considerations of "'orderly planning of transactions, of promoting multistate commercial intercourse, and of protecting one party from undue imposition by the other,'" weigh in favor of the application of Georgia law.).

Furthermore, as explained below, the definition of "occurrence" in this type of insurance contract has been explicitly addressed by the Mississippi Supreme Court. This highlights a material difference between Mississippi law and Louisiana law regarding the specific insurance policy issues at hand. Only when there is no conflict or material difference between the laws of the two states, does the choice-of-law analysis not apply and the forum law automatically govern. *See Am. Elec. Power. Co. Inc. v. Affiliated FM Ins. Co.*, 556 F.3d 282, 286 n.2 (5th Cir. 2009). As such, Mississippi law governs as to the issues surrounding Aviz's Nationwide insurance policy.

**B. Standard of Review for Summary Judgment**

Summary judgment is proper only when the record indicates that there is not a "genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56; *Celotex v. Catrett*, 477 U.S. 317, 322 (1986). A genuine issue of fact exists if the evidence is such that a reasonable jury could return a verdict for the non-moving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). When considering a motion for

summary judgment, this Court "will review the facts drawing all inferences most favorable to the party opposing the motion." *Reid v. State Farm Mut. Auto. Ins. Co.*, 784 F.2d 577, 578 (5th Cir. 1986).

The party moving for summary judgment bears the initial burden of "informing the district court of the basis for its motion, and identifying those portions of [the record] which it believes demonstrate the absence of a genuine issue of material fact." *Celotex*, 477 U.S. at 323. "If a moving party meets the initial burden of showing that there is no genuine issue of material fact, the burden shifts to the non-moving party to produce evidence or designate specific facts showing the existence of a genuine issue for trial." *Engstrom v. First Nat'l Bank of Eagle Lake*, 47 F.3d 1459, 1462 (5th Cir. 1995) (citing *Celotex*, 477 U.S. at 322-24). In order to satisfy its burden, the non-moving party must put forth competent evidence and cannot rely on "unsubstantiated assertions" and "conclusory allegations." *Hopper v. Frank*, 16 F.3d 92, 97 (5th Cir. 1994); *Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. 871, 871-73 (1990). The mere argued existence of a factual dispute will not defeat an otherwise properly supported motion. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). "If the evidence is merely colorable, or is not significantly probative," summary judgment is appropriate. *Id.* at 249-50.

## C. Mississippi Contract Law

"Under Mississippi law, an insurance policy is a contract subject to the general rules of contract interpretation." *ACS Constr. Co. Inc. v. CGU*, 332 F.3d 885, 888 (5th Cir. 2003). The insurance policy must be construed as a whole. *Holloman v. Holloman*, 691 So.2d 897, 899 (Miss. 1996). If it is unambiguous, the Court will decide its meaning as a matter of law and enforce the contract as written. *Delta Pride Catfish, Inc. v. Home Ins. Co.*, 697 So.2d 400, 403

(Miss. 1997). When a contract is ambiguous, a court should strictly construe the policy against the insurer. *Titan Indem. Co. v. Estes*, 825 So.2d 651, 656 (Miss. 2002). However, "a court must refrain from altering or changing a policy where terms are unambiguous, despite resulting hardship on the insured." *Id.*

Under Mississippi law, when there is a question of a party's duty to defend or indemnify, the Court looks to the allegations stated in the underlying complaint. *Am. Guar. & Liab. Ins. Co. v. 1906 Co.*, 273 F.3d 605, 610 (5th Cir. 2001). The Court will find a duty to defend if the allegations state a claim within or arguably within the scope of coverage. *Ingalls Shipbuilding v. Fed. Ins. Co.*, 410 F.3d 214, 225 (5th Cir. 2005). To determine whether Nationwide owes a duty to defend or indemnify Aviz, the Court must consider whether the allegations in the underlying petitions state a claim within or arguably within the scope of the insurance policy's coverage, as interpreted by Mississippi Law. *See id.*

**D. Insurance Coverage**

Nationwide argues that, under Mississippi law, Morad's underlying claims of defective construction satisfy neither the requirements of "property damage" or "occurrence" under its policy definition.[3] Rec. Doc. 59 at 7-8. Aviz's Nationwide policy states in relevant part:

> We will pay those sums that the insured become legally obligated to pay as damages because of. . . "property damage" to which this insurance applies. . . .
>
> This insurance applies to. . . "property damage" only if:
> (1) The . . . "property damage" is caused by an "occurrence". . .
>
> "Occurrence" means an accident, including continuous or repeated exposure to

---

[3]Nationwide also asserts that the complaint does not allege "bodily damage" as defined by their policy. Rec. Doc. 59 at 7. Plaintiff does not deny this and is in agreement with Nationwide that no "bodily injury" is alleged. Rec. Doc. 72 at 3.

7

substantially the same general harmful conditions.

(Rec. Doc. 59-1 at 10, 23). "Property damage" has been defined to be "[p]hysical [i]njury to tangible property, including continuous or repeated exposure to substantially the same general harmful conditions." Rec. Doc. 59-1 at 24. "Accident" is not defined in the contract, but its meaning in this context has been addressed by the Mississippi Supreme Court to mean "an inadvertent act." *See Architex Assoc. Inc. v. Scottsdale Ins. Co.*, 27 So.3d 1148, 1161 (Miss. 2010).

Nationwide argues that the policy does not cover Morad's claims seeking damages in the form of money paid to Aviz for work that was never completed and for employee salaries Morad had to pay during the delay of the restaurant opening that resulted when the work was not completed on time. Rec. Doc. 59-14 at 8-10. Nationwide asserts that these two claims do not constitute "physical injury to tangible property." Rec. Doc. 59-14 at 8-10. Furthermore, Nationwide alleges that of Morad's claims that do relate to "property damage," any such damage was caused by the faulty work performed by the subcontractors, that these acts were not "accidental," and as such, they do not meet the requirements of an "occurrence."[4] Rec. Doc. 59-14 at 10.

---

[4] Nationwide concludes that the following negligent construction defects and other claims alleged by Morad that do relate to "property damage" but do not constitute an "occurrence" include: the swelling, buckling, separation and collapse of the flooring allegedly caused by Aviz's failure to take certain actions; the allegedly negligent construction of the restaurant's plumbing system; the actions or omissions of Aviz that allegedly resulted in the closure of the restaurant; the alleged actions or omissions of Aviz in failing to flash the roof and use tar for the shingles; the alleged failure to renew the license of Aviz Home Improvement that caused a violation of Louisiana Revised Statute 37:2160, *et seq.*; Morad's alleged use of the wrong size of electrical components and negligent electrical work, including improper wiring of the restaurant; the allegations that Aviz breached his contract; and claims against Aviz for redhibition. Rec. Doc. 58 at 12-19.

Morad, relying in part on *Architex*, argues that negligent or defective construction of a contractor or subcontractor can constitute an "occurrence" under Mississippi law. Rec. Doc. 72 at 4; 6-7. Morad further states that no policy coverage exception exists that would prevent coverage by Nationwide. Rec. Doc. 72, at 8-11. As such, Morad argues that coverage by Nationwide is triggered in this case. Rec. Doc. 72 at 7.

**1.  Payment for Unperformed Work and Lost Wages Claims**

The Court finds the relevant case law supports the conclusion that Nationwide's policy does not cover Morad's claims against Aviz for damages stemming from work that Aviz never performed and for monetary damages in the amount of lost wages Morad had to pay his employees during the delay before the restaurant opening. For property damage coverage to exist under Aviz's Nationwide policy, there must be physical injury to tangible property. Under Mississippi law, "[p]urely pecuniary or economic losses are not 'property damage.'" *Audubon Ins. Co., v. Stefancik*, 98 F.Supp. 2d 751, 756 (S.D. Miss. 1999) (holding that claims for damages in the form of lost income did not trigger insurance coverage). The losses claimed by Morad in the form of lost wages and payment for work that was never performed do not constitute property damage. As such, Nationwide has no duty to defend or indemnify Aviz as to these claims.

**2. Property Damage Claims**

The Court's review of relevant Mississippi and Fifth Circuit case law reveals that the jurisprudence does find that in certain cases, faulty workmanship or defective work may be accidental. The facts of this case are particularly similar to those of *Architex*, which was the first time the Mississippi Supreme Court addressed the definition of "occurrence" in the construction

9

context. In *Architex*, the property owner brought a claim against the general contractor and its insurance provider for negligent work of the subcontractors who had been intentionally hired by the general contractor. *Architex*, 27 So.3d at 1149. With identical insurance coverage provisions as in this case, the Mississippi Supreme Court held that the definition of "occurrence"did not exclude coverage for damage caused by the subcontractor's alleged negligence. *Id.* at 1162. The court reasoned that:

> Faulty workmanship, defective work et. al., may be accidental, intentional or neither. A return to basics leads this Court to conclude that the underlying facts will determine whether the complaint of "property damage" (defective or faulty workmanship) was proximately caused by breach of a recognizable duty and whether that breach was accidental or intentional; or whether the "property damage" was caused by neither. In two of the three aforementioned scenarios, no coverage would exist. Only when "property damage is proximately caused by an accident (an inadvertent act) does an "occurrence," as defined by the policy, trigger coverage.

*Id.* at 1161. In *Architex*, the court determined that based on the insufficiently developed record it could not decide whether the contractor's actions were accidental, intentional, or neither. *Id.*

Similarly here, the disputed facts leave open the possibility that the "property damage" at issue was caused by an accident (an inadvertent act) and thus constitutes an occurrence for the purposes of insurance coverage. In looking at the facts as they have been developed in the record, Aviz's allegedly negligent workmanship potentially triggers coverage under Nationwide's policy. The record shows that any alleged negligent construction was, at least in part, caused by Aviz's subcontractors. Rec. Doc. 72-3. The allegedly faulty workmanship at issue in the present case primarily concerns problems with the negligent construction of the restaurant's flooring, negligent construction of the plumbing system, and the failure to flash the roofing or use tar for the shingles, all of which the record indicates were the responsibility of the

subcontractors. Rec. Doc. 72, at 9.

In another factually similar breach of contract and professional negligence case, the Southern District Court of Mississippi refused to grant Nationwide's motion for summary judgment when the court concluded that negligent construction resulting from poor workmanship was an occurrence and that a breach of contract also constituted property damage as defined under the insurance policy. *Nationwide Mut. Fire Ins. Co. V. Hayes*, 2010 WL 3603797 (S.D. Miss. Sept. 7, 2010). Ever since *Architex*, claims of faulty workmanship and claims against contractors for negligent construction typically leave open the possibility of coverage and trigger an insurance provider's duty to defend. *See Carl E. Woodward, LLC v. Acceptance Indem.,* 2011 WL 98404, at *7 (S.D. Miss. Jan. 12, 2011), *rev'd on other grounds* 2014 WL 535726 (5th Cir. Feb. 11, 2014) ("[P]ursuant to the *Architex* decision, faulty workmanship and the hiring of a subcontractor are not as a matter of law excluded from coverage."); Miss. Ins. Law & Prac. § 16:17 ("Since the *Architex* decision, courts have found that claims against contractors for negligent construction must be defended as arguably falling within coverage."). As such, assuming none of the other policy provisions precludes coverage, summary judgment as to these claims is not appropriate.

### E. Expected or Intended Injury Exclusion

Additionally, Nationwide argues that Aviz's insurance policy's "Expected or Intended Injury Exclusion" "preclude[s] all damages which do not arise out of an 'occurrence.'" Rec. Doc. 58 at 19-20. This Court finds that no exclusion applies to prevent Nationwide from having a duty to defend or indemnify under this provision. The "Expected or Intended Injury Exclusion" does not apply because, based on the facts of the complaint and those that have been brought forth

11

during discovery, the possibility continues to exist that Aviz's conduct was "accidental," such that the actions in question would satisfy the requirements of an "occurrence." *See* Rec. Doc. 1; Rec. Doc. 72-3. Accordingly, this exclusion does not eliminate Nationwide's duty to defend or indemnify.

**F. The Damage to Your Work Exclusion**

Finally, Nationwide argues that Aviz's insurance policy's "damage to your work exclusion" "preclude[s] coverage for any 'property damage' caused by an 'occurrence,'" which arises in the form of accidents due to defective workmanship after the completion of the work Rec. Doc. 58 at 20-21 (citing *Liberty Mut. Ins. Co. v. Triangle Indus., Inc.*, 957 F.2d 1153, 1158 (4th Cir. 1992)). However, this Court finds that the "Damage to Your Work Exclusion" does not prevent coverage here because the policy itself states that "this exclusion does not apply if the damaged work or the work out of which the damage arises was performed. . . by a subcontractor." Rec. Doc. 59-1 at 14. Morad has alleged damages for work performed by Aviz's subcontractors. *See* Rec. Doc. 1; Rec. Doc. 72-3. Accordingly, this exclusion does not necessarily preclude coverage.

**G. Duty to Defend**

"Ultimate liability by the insurer is not dispositive of its duty to defend." *Merchants Co. v. Am. Motorists Ins. Co.*, 794 F.Supp. 611, 617 (S.D. Miss. 1992). "The duty to defend is broader than the insurer's duty to indemnify. . . the insurer has a duty to defend when there is any basis for potential liability under the policy." *Id.* The duty to defend is decided based on the allegations in the complaint, as well as any extrinsic evidence of which Nationwide becomes aware. *Id.* If these arguably bring the claim within the coverage of the insurance policy, the

12

duty to defend is triggered. *Am. Guar. & Liab. Ins. Co. v. 1906 Co.*, 273 F.3d 605, 610 (5th Cir. 2001). On the other hand, if it is clear that the claims are not covered by the policy, then there is no duty to defend. *Id.* at 610-11. Where multiple claims are made, the insurer must provide a defense if any ground falls within the terms of the policy. *Id.* Because the complaint contains claims that allege "property damage," caused by an "occurrence," and leave open the possibility of coverage under Aviz's policy with no exclusion to preclude coverage, a duty to defend exists although some of Morad's claims may fall outside of Nationwide's policy.

### III. Conclusion

For the reasons discussed above, some of the claims are arguably within the coverage of the Nationwide policy. Therefore, Nationwide has a duty to defend Aviz against those claims.

Accordingly,

IT IS ORDERED that defendant Nationwide's motion for summary judgment is PARTIALLY GRANTED and PARTIALLY DENIED. Rec. Doc. 59.

New Orleans, Louisiana, this 5th day of March, 2014.

**HELEN G. BERRIGAN**
**UNITED STATES DISTRICT JUDGE**